**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| OCTAVIA PAYNE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2: 11-cv-2238-JTF-dkv |
| MUELLER INDUSTRIES, INC., | ) |
| | ) |
|     Defendant. | ) |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendant's, Mueller Industries, Inc., Motion for Summary Judgment which was filed on November 16, 2012 and referred to the Magistrate on March 9, 2013. On April 25, 2013, the Magistrate Judge entered her Report and Recommendation to grant Defendant's Motion for Summary Judgment. Plaintiff timely filed an Objection to the Magistrate's Report on May 9, 2013. Defendant responded to Plaintiff's Objection on May 22, 2013 to which Plaintiff replied on June 6, 2013. [1]

The Court has reviewed *de novo* the entire record including the Magistrate Judge's Report and Recommendation and legal analysis. The Court ADOPTS the Magistrate Judge's Report and Recommendation to grant Defendant's Motion for summary judgment

---
[1] D.E. #30, D.E.#43, D.E., #49, D.E. #52- D.E. #54

1

under Fed. R. Civ. P. 56. Therefore, summary judgment is issued on behalf of Mueller Industries, Inc. and the case is dismissed with prejudice.

## I. **FINDINGS OF FACT**

In October 2004, Octavia Payne began working as a temporary employee for Mueller Industries. After obtaining a permanent position with the company in January, 2005, Payne worked in several capacities but leading eventually to the last job, in Mueller's Pacific Division, as customer service representative and as sales representative for the company's manufactured housing and recreational vehicle products line.

During her tenure at Mueller, the record establishes that Payne was repetitively absent from work. In April 2006, she was issued a final written warning about her absenteeism. The warning stated that "any additional absentees [sic] will result in the termination of this employee/employer relationship." Still, her attendance remained at issue, escalating in frequency.

On July 6, 2010, Glenn Ray ("Ray"), Human Resources Generalist and Suzanne Mayfield ("Mayfield"), Customer Service Manager and Payne's direct supervisor, met with Payne to counsel her about her absenteeism. Mayfield and Ray advised Payne that she had exhausted all paid leave, and at its discretion, the company would grant her request for unpaid leave. Further,

Mayfield and Ray mandated that any subsequent absences caused by a personal or familial illness must be documented by a physician's statement. Payne was explicitly told that failure to comply with those guidelines would result in disciplinary action and possible termination of employment. At the meeting's conclusion, Mayfield presented Payne with written documentation of the verbal discussions had at the meeting.

Following the meeting, Payne returned to her desk briefly before, as she explained, "her heart start[ed] tightening up." She sent Mayfield an email stating that she was leaving work to go to the emergency room. Payne asserts that her physician instructed her to refrain from working for two weeks. After Payne did not return to work, she was placed on short term disability on July 14, 2010.[2] On August 9, 2010, Payne's short-term disability was terminated because CIGNA, Mueller's insurance provider and administrator, determined her medical information did not support continued short-term disability.

Nevertheless, Payne failed to return to work on August 10, 2010 as scheduled. At that point, she was no longer on approved leave for a Short-Term Disability. Payne also did not qualify for any Family and Medical Leave Act (FMLA) or any other possible leave. On August 25, 2010, James Browne, Director of

---

[2] Payne has produced phone records of telephone calls she placed to both Mayfield and Browne on August 6, 2010. According to Payne, she left them both parties voicemail messages because the calls were made after-hours.

3

Human Resources, sent Payne a letter stating he understood that she could not return to work until September 7, 2010 however "[t]he company has not received any medical documentation or excuse for this absence."[3] The letter advised Payne that: 1) she was ineligible for FMLA leave; 2) her absences were not compensable as of August, 9, 2010 due to the lack of supporting medical documentation; 3) Mueller could not hold Payne's position; 4) the company would reevaluate her employment status upon her return.

Although, Payne received this letter on August 25, 2010, she did not communicate with Mueller until September 6, 2010. At that time, she left a voicemail for her supervisor, Browne. Later she mailed her employer a letter stating she would return to work on October 1, 2010, not on September 7, 2010, the date the doctor had originally set. Browne claims he never received the letter or the voicemail. Shortly thereafter, Mueller terminated Payne's employment.[4]

Payne filed a charge with the EEOC on October 20, 2010, alleging that, by discharging her, Mueller had discriminated

---

[3] Payne asserts that on or about August 6 or 7, 2010, she faxed a physician's note excusing her from work for August 6, 2010 through September 5, 2010, Mueller never received any such fax or copy of the note. Payne admits that she does not have a fax confirmation receipt indicating that Mueller received the fax.
[4] As Browne was out of town, he did not receive the letter at that time, and , in fact, does not recall ever having received the letter.

against her based on her race. On February 2, 2011, the EEOC issued a no-cause finding.

## II. <u>Legal Standard</u>

A district judge has the discretion to refer dispositive matters to a magistrate judge to conduct a hearing and propose findings of fact and recommendations. 28 U.S.C. § 636(b)(1)(B) ("[A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by the judge of court, of any motion excepted in subparagraph (A) [for which a motion to dismiss or quash an indictment or information made by the defendant is included]"). The magistrate judge's proposed findings of fact and recommendations are reviewed *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); *See e.g., Baker v. Peterson*, 67 Fed.App'x. 308, 311, 2003 WL 21321184 (6th Cir. 2003) ("A district court must review dispositive motions under the *de novo* standard."); *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980) (quoting Matthews v. Weber, 423 U.S. 261, 275 (1976) (The de novo standard mandated by Congress was used to provide judges with the appropriate discretion to accept or decline a Magistrate Judge's reports and recommendations.)

Summary judgment is appropriate if the moving party can establish there is "no genuine dispute as to any material fact."

Fed. R. Civ. P. 56(a). The threshold inquiry in determining if the party is entitled to summary judgment is whether a finder of fact could reasonably find in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986). A party asserting that a fact cannot be or that a fact is genuinely disputed must support his assertion by citing to specific parts in the record, and the court must examine all factual evidence in the light most favorable to the non-moving party. *See* Fed. R. Civ. P 56(c); *See McLean v. 988011 Ontario Ltd.*, 224 F.3d 797,800 (6th Cir. 2000)(citing *Northland Ins. Co. v. Guardsman Prods., Inc.,* 141 F.3d 612, 613 (6th Cir. 1998)). If the non-moving party fails to support the facts asserted, the court has discretion to:

> 1) give an opportunity to properly support or address the fact;
> 2) consider the fact undisputed for purposes of the motion;
>
> 3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or
>
> 4) issue any other appropriate judgment.

Fed. R. Civ. P. 56(e). Conversely, the non-moving party can survive a motion for summary judgment by establishing "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Although the non-moving party has the burden of producing rebuttal evidence, the non-moving party can simply overcome summary judgment by producing evidence from the pleadings, depositions, and any other documents in the record that establish a genuine issue. *See Celotex,* 477 U.S. at 324. Nevertheless, the non-moving party must prove more than a "mere existence of some alleged factual dispute between the parties" and must provide facts that are material to the outcome of the suit in order to survive the summary judgment motion. *Anderson,* 477 U.S. at 247-248.

### III. Analysis

The Magistrate Judge correctly found that Payne did not establish a *prima facie* case of racial discrimination by failing to prove that a similar-situated employee outside her race was treated differently by her employer. Under Title VII, the Court must analyze racial employment discrimination complaints under the *McDonnell Douglas* burden-shifting test. To establish a *prima facie* case of discrimination, Plaintiff must show that she was: (1) a member of a racial minority, (2) subjected to a decision detrimental to his employment, (3) was qualified for the position, and (4) replaced by someone outside his racial minority group or treated differently than other similarly-situated employees not in his protected class. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

7

Mueller challenges only one of the four elements of Payne's *prima facie* case: that she was treated differently from another similarly situated employee outside of her protected class. Specifically, in regards to the fourth element, Payne asserts that Pam Cromwell, another Mueller employer, was given preferential treatment because she was granted a lengthier leave. Payne alleges that Cromwell "was allowed to be out a whole year and an [sic] half" due to health issues "before being terminated," whereas she (Payne) was only allowed sixty days.

For employees to be similarly-situated, the Sixth Circuit requires that employees having similar conduct were treated differently by the same supervisor in such a manner that the variation in judgment is inappropriate. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); *see also* Pierce v. Commonwealth Life Ins. Co., 40 F. 3d 796, 802 (6th Cir. 1994) ("The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.") Circumstances that make employment situations incomparable include, "differences in job title and responsibilities, experience, and disciplinary history." Campbell v. Hamilton Cnty., 23 Fed. Appx. 318, 325 (6th Cir. 2001). The "similarly-situated" determination does not mandate an exact correlation between employees. Rather, the employees

"must be similar in all of the relevant aspects." Erecegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted) (emphasis in original).

While Plaintiff has indicated that Cromwell worked in the same department, reported to the same supervisors, and shared the same accounts as Payne, no relevant similarity between the two has been shown. Relevant similarity would include the circumstances surrounding Cromwell's leave and whether Cromwell, like Payne, had a history of absenteeism. Also at issue, is whether Cromwell received a final written warning regarding her poor attendance. *cf.* Campbell v. Hamilton Cnty., 23 Fed. App'x 318, 326 (6th Cir. 2001) (finding that another employee was not similarly situated to the plaintiff due to differing respective disciplinary histories).

Even if Cromwell and Payne were similarly situated, there is no evidence that she was treated more favorably than Payne. Mueller offers undisputed proof that Cromwell was treated less favorably than Payne. Similar to Payne, Cromwell failed to return to work by the date designated by her physician. Cromwell also had exhausted her FMLA leave and was ineligible for short-term disability. Moreover, Cromwell failed to communicate with her supervisor or manager regarding her status during her hiatus, similar to Payne. However, unlike Payne, Cromwell was not afforded an opportunity to salvage any

employment relationship with Mueller. Instead, Cromwell was summarily discharged upon the culmination of the same offending circumstances. Payne actually had an additional "grace period." Browne's letter dated August 25, 2010 stated that Mueller could no longer hold Payne's position open, although the company would evaluate Payne's employment for other placement upon her return.

Alternatively, had Payne set forth a *prima facie* case of discrimination, Mueller has still offered legitimate non-discriminatory reasons for terminating Payne. Payne failed to properly communicate with Mueller during absences for which she had no short-term disability or FMLA leave. Finally, despite her written warning, Payne also failed to present Mueller with medical documentation regarding the absences.[5]

Because Mueller has established a legitimate reason for Payne's termination, the burden shifts to Payne to show a pretext for her termination. In the Sixth Circuit, a plaintiff may establish pretext by showing that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the action. *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir. 2004). The Plaintiff must produce sufficient evidence from which a jury could reasonably doubt the defendant's explanation. Chen v. Dow Chem. Co., 580 F. 3d 394, 400 (6th Cir. 2009). However, a

---

[5] D.E. #30-1 at 4

plaintiff may not establish pretext with conclusory statements and subjective beliefs. Mitchell v. Toledo Hosp., 964 F. 2d 577, 584-585 (6th Cir. 1992).

Payne contests Mueller's summary judgment motion by insisting that she communicated with Mueller throughout her absence. Payne asserts that Mueller's proffered reasons for her termination are not credible and have no basis in fact. In order to successfully rely on this method for proving pretext, a plaintiff "must allege more than a dispute over the facts upon which his discharge was based." Braithwaite v. Timken Co., 258 F. 3d 488, 494 (6th Cir. 2001). Payne must put forth evidence establishing that the proffered basis for plaintiff's discharge was factually false. Abdulnor v. Campbell Soup Supply Co., 502 F. 3d 496, 502 (6th Circuit 2007) The issue presented is not whether Payne actually failed to properly communicate with and provide medical documentation to Mueller during her absence, but, rather, if Mueller held an "honest belief" that Payne had failed to do so.

Payne asserts that she faxed certain physician's notes to Mueller that indicated she would not be able to return to work as planned. She specifically refers to "doctor excuses for 7-21-10 thru 8-9-10 and 8-6-10 thru 9-6-10."[6] However, Mueller contends it never received any such faxes or doctor's notes.

---

[6] D.E. #32 at 2

11

Regardless if Payne faxed the doctor's notes to her employer, Mueller held an "honest belief," that she did not send them because they were never received.

The voicemail Payne allegedly left for Browne, similar to the faxes, does not prove discriminatory practices by Mueller because the company held an "honest belief," that Payne never left the voicemail. The record indicates that Browne nor anyone else at Mueller was aware of Payne's September 6, 2010 voicemail or the letter she claims was mailed to Browne on the following day.[7] Moreover on September 7 2010, Browne was out of town, Payne's letter was not addressed to Browne, nor mailed directly to his suite or signed as received by Browne. Payne's termination letter was finalized on September 8, 2010, the date Mueller held an "honest belief" that Payne had failed to contact the company in reference to her absences or employment status.

The record suggests that Mueller reasonably relied on specific facts in firing Payne. Payne acknowledged that she failed to communicate with Mueller, at any time, between August 6, 2010 and September 6, 2010. On August 25, 2010, when Mueller notified Payne that the company had not received any medical documentation or excuses for her absences, Payne could have quickly rectified the situation by immediately contacting her

---

[7] The Court notes that Payne's phone calls to Mueller were made after-hours and, in at least one instance, on a holiday.

employer. Also, Payne's alleged attempts to communicate with Mueller were not in accordance with the admonition in her July 6, 2010 final written warning. The final written warning required her to contact her supervisor if she desired an absence from work for sickness or medical leave. Mueller has justified considerably Payne's termination. Moreover, Payne has failed to establish that, in discharging her, Mueller "made an error too obvious to be intentional." *See* Smith v. Chrysler Corp., 155 F. 3d 799, 807 (6th Cir. 1998).

Payne objects to the Magistrate's recommendation by introducing evidence of a faxed doctor's report, and by asserting that inconsistencies in Mueller's attendance reports hinted to discriminatory practices. First, newly introduced evidence in Payne's objection is inadmissible because the initial discovery period has passed. Even if the evidence were admissible, the fax from the doctor does not confirm that any such fax was previously sent or received successfully by Mueller. The other allegations that Payne raises regarding the mistakes in the attendance records are insubstantial to the Court's determination of discrimination. Again, these errors were not obvious enough to be deemed intentional.[8] *See id.*

---

[8] Payne asserts that Mueller recorded her absence for the death of her mother-in-law, when it was her father-in-law. She also mentions how Ms. Cromwell's attendance record was marked out with white out and appeared to be altered.

In sum, Payne has not put forth sufficient evidence for a jury to reasonably conclude that Mueller did not have an honest belief that Payne had failed to properly communicate with the company regarding her lengthy absence from work.

## **CONCLUSION**

After reviewing the record *de novo* the Court Adopts the Magistrate Judge's Report and Recommendation. Therefore, Defendant's Motion for Summary Judgment is GRANTED and the case should be closed with prejudice.

IT IS SO ORDERED this 24th day of July, 2013.

***s/John T.Fowlkes, Jr.***
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE